All right, Mr. Burke, you have reserved two minutes for rebuttal. But before we start, can you just tell us the proper pronunciation of your client's name? Elmowsky, Your Honor. Elmowsky, so the W. Sometimes Ws have the V sound, and sometimes they have a W sound. But this one's a W. Correct. All right, thanks. May it please the Court, Michael Burke, on behalf of Paul Elmowsky, I'm from the firm of Hodges, Walsh & Burke. Your Honors, Mr. Elmowsky is a 71-year-old man who has an impeccable reputation in the community as a real estate art dealer and collector. He was sentenced to three months incarceration, nine months home detention, two years of supervised release, including location monitoring, and a $30,000 fine. But you're not challenging the sentencing, right? No, I'm not. Otherwise, your brief sort of begins with the sentence, and your oral argument is beginning with the sentence. I suggest that it's excessive, but you're not challenging the sentence. I'm not challenging the sentence. My challenge, Your Honor, as to the appeal are in four areas, the statute of limitations as to when it began to run and expired, the insufficient evidence as to his knowledge, the failure to instruct on good faith, and the Brady violation that denied him a fair trial. But by way of background, Your Honor, and as is set forth in my brief, Mr. Elmowsky purchased the Mini Uzi firearm over 30 years ago. But the statute criminalizes, I guess, the transfer or the possession, right? Possession continues to receive or possess a firearm. That's correct, Your Honor. And the point being is that in the statute as well, it says that it's the duty of the transferor to pay the tax, the $200 tax, and register the firearm on the registry act. And when cross-examined the ATF Chief Howard, I asked so he could not access or register. He wouldn't be able to cure the mistake that was made by the licensed federal firearms dealer who transferred it to him as a pistol, didn't pay the $200 tax, and didn't put it on the registry. Instead, he filled out the pistol permit paperwork, put it on Mr. Elmowsky's pistol permit, where it remained for 30 years in the New York State Police database as well as the Rockland County Clerk's database, showing that this Mini Uzi was registered under his pistol permit instead of being registered by the licensed, licensed through the ATF, federal licensed firearm dealer. I get all that, but the statute, the language of the statute is receive or possess. And did your client not possess the firearm for 30 years? He did, but he possessed the firearm that the transferor did not register. And my client... Now, that might be a defense or it might be an argument to be made to a jury, but you're saying this violates the statute, that the statute of limitations has expired, and that seems hard to square with the language of the statute, which treats possession as obviously a continuing offense. The statute, and the government agrees as to the statute of limitations, is a three-year statute of limitations. The only other cases that I could remotely find dealing with failing to register are under SORNA, where they then also say three years, if you fail to register, the statute runs within three years. It's not a continuous crime on some of the cases that I found. Here, he did, based on mistake, and that ties into the arguments as to his knowledge, what did he know as far as the characteristics of this firearm that would have warranted or required him to register? But the fundamental question here is, Your Honor, whose duty is it to register? And it's the licensed firearm dealer who sold it to him. The transferor is the one that must register. Mr. Romowski... So are you saying he was incapable of curing the failure to register? Absolutely. So he had no ability to go to the local registry and say, I have this. I don't have a correct registration. Please register it. That's right. The National Firearm Registry, the transferor, is the one under the statute and was in the instructions, the jury instructions that outline the statute as to the transferor must... But I'm not asking about that. You're saying it was impossible for him to cure the initial failure to register. Correct. And that's exactly what ATF Chief Howard said in his testimony, can't acquire, can't register. And that was on appendix page 349 where he specifically said that. So he could not cure it unless he was going to go and... So he was entitled to continue to possess it for the rest of his lifetime without registering because of the initial error. Is that your view? So the statute can't be enforced. The statute, the time, there's two parts to that. The time where the government could have enforced was within three years of acquiring because they had notice, arguably through the fact that it was placed on his pistol permit, it's public record. But even more importantly, ATF, when serious sportsmen went out of business, as a licensed firearm dealer, they're required to surrender all their records to the ATF. That was done in 1996 when they went out of business. So the government had knowledge of the fact that this mini Uzi was not registered under the National Firearm Registry Act, and at that point could have sought prosecution but did not. So there is a two-pronged... So it's the government's obligation as a continuing matter to make sure that registration has occurred, notwithstanding the language of the statute, that it's a prohibited act for any person to possess a firearm which is not registered to him. Well, I guess the way that the statute's written as far as whose duty it is to register, and once you're in possession, then it becomes a strict liability offense. You're in possession of it, whether you knew it or not, whether you could, and you can't cure it unless you want to incubate yourself and provide... What we've held, though, is that what you need to know is the physical characteristics that make the weapon a firearm under the statute, right? That's what Staples says, correct, as far as the physical characteristics of what makes this firearm. And what we have here is an expert licensed firearm dealer who said, this is a pistol, I'm selling it to you as a pistol, and mini Uzis actually come in pistol. How many firearms or weapons that fire projectiles did your client own? He had, well, what the government sought to introduce were 26 different firearms that were secured in a gun case in his home. He had 26, is that right? Correct. And he had had some of them for a long time, since the early 90s. And wasn't there testimony or evidence in the record that he had expertise in firearms? And he presented that to himself? Well, there was a statement that he made. I would quarrel with the issue of expertise. He's an art collector. Familiarity. Familiarity is perhaps better. And it came through the ATF agent who, at the time that he's executing the search warrant, my client makes the statement that he's familiar with the federal firearms laws and that this one wasn't registered. It wasn't registered because it's on his pistol permit where it was for over 30 years in the Rockland County clerk where a judge, before it even gets added onto the permit, reviews the process to determine whether this could be added onto the permit. So he wasn't hiding anything. He just believed that this gun, based on the license deal that sold it to him, was a pistol. And as I said, many Uzis also come in the pistol form. They have braces that could swing out like the stock here. And firearm regulations through the ATF, because of how things can be modified, are difficult to navigate at times, and you can have an unknowing possession of something that should have been registered when it wasn't. But again, it turns on whose duty it is to register, and that was the transferor who was the licensed dealer. And he could have never cured that. It is a legal impossibility for him to try to go in and say, he went into the local police department and said, hey, I got this gun, I got to register it. He has no access, Mr. Romowski, nor does the only one that has access to the registry is the transferor here, the gun dealer. So he couldn't cure that. So again, now the issue that I speak to as to the insufficiency of his knowledge, again, ties into what I was saying here. It was a mistake on the part of the dealer who filled out the pistol permit paperwork and said, here it is, put it on your application, go before Judge Nelson in Rockland County Court, which did come out during trial, or at least questions related to Judge Nelson, who was on the bench for a very long time, reviewed a lot of pistol permits, had some military background himself, and this was added on to my client's permit after review by the Rockland County judge who determined that the application could be approved. Because he doesn't have the gun. It seems to me what you're saying, basically it's unfair to apply the law as it reads and the case laws as it's developed regarding this law to your client. It's most certainly unfair, and we're talking about something that over 30 years it remained there without anyone raising an issue, whether it's the New York State Police, whether it's the Rockland County clerk, whether it's the judge who oversaw it, to say that this shouldn't be on your pistol permit. It should have been registered as a short barrel rifle because it's a mini-use. Why wasn't it his obligation to ensure that the firearms that he had were correctly registered or not? Because that obligation is on the transferor, and that's clear in the statute, and the statutory background says I'm sorry, what statute is that clear in? The statute I was just reading to you says it's unlawful for any person to possess. If you look on page 15 in the jury instructions, it talks about the statutory background of the statute that he is prosecuting. I'm talking about the actual text of the statute, and I'm asking you. It says any person to possess the firearm, and you're saying that that isn't what it means. Well, where I point to and where it was in the jury instructions is on page 15 it talks about the statutory background, and it is the transferor's duty to pay the tax and register. Okay. So in the elements of the offense, Your Honor, you're correct. In the statutory background that was part of the jury instruction that went to the jury, it said that's on the transferor, the gun dealer, and there's also the testimony from ATF Chief Hauer who said can't acquire, can't register because he wasn't the transferor, which is consistent with what the statute, the background of the statute says. Now, as to the, I tied in, in my brief, I argue as to my client's knowledge and my request for a good faith instruction. I know that good faith is typically an instruction involving a specific intent crime. Right. I mean, this has already pretty much been covered even by the Supreme Court, right? It has. And the point being is that part of the theory of the defense was my client's knowledge, and we made the request as to the good faith instruction, which was denied. I'm not going to belabor that point. I reserved it for argument, and I argued it here. All right. As to the Brady violations, and here they're ‑‑ Well, let's be, I mean, we're way over at this point. It's about, we're almost four minutes over time for you. I'm sorry, Your Honor. I didn't realize that it was. Well, you have a couple of minutes for rebuttal. Okay. I'll address the Brady issue at time of rebuttal. Okay. Or you could do it now and use your time. I'll use my time up on my rebuttal and discuss the Brady issue. Okay. Because I think it's an important issue that we spend a good deal of time in our brief, and I want to just address it now. So here, Your Honors, the government suppressed Brady material. It did not, was not disclosed to the defense until cross‑examination or actually pre‑cross. Well, this is the, you know, it's not the 4473. Did I have that right? That's correct. 4473 for the Uzi. It's a 4473 for a different weapon, right, that has the same number. It has the same exact transaction number. Right. And this is ‑‑ Why is this exculpatory? Well, it's exculpatory, Your Honor, because the whole issue here is the registry and whether something was done 30 years ago when this was transferred. Well, I know you keep saying that's what the issue is, but I think the statute just says whether he possessed it or not. So I'm not sure it's exculpatory. You keep saying that this is a real key, turns on who had the duty to register. And I don't think the statute that Mr. Olmowski was charged with turns on who had the duty to register. It has whether or not he possessed a firearm that meets the definition under the statute. Well, possessed a firearm that was unregistered. And the ‑‑ it's not ‑‑ But you had the 4473 for the Uzi. Which we had the 4473 for the Uzi, but the same transaction number had a 4473 for a Glock. Okay. So why is that exculpatory? That's exculpatory, Your Honor, because here we're talking about records from over 30 years ago. And the issue here, it's not per se illegal to possess this weapon. It's only illegal to possess this weapon if it's not registered. So looking back as far as preparing the defense, arguing, we're now third witness into the trial. Openings have already been made. Defense theories have been set forth. We learned for the first time that there's actually another 4473 with the same transaction number, and there's only one transaction number of import for the entire trial. They disclosed that form. When they didn't disclose it before, there's a vague reference to an e‑mail, but that wasn't ‑‑ I get all that. Why is this exculpatory? It's exculpatory because it's an issue as to recordkeeping and registries. And if the ATF says, well, our recordkeeping was ‑‑ we could have explored further. If we had this information at the time to use it as to whether there was any evidence of a $200 tax being paid, even though it might not have been registered, or other issues with the ATF's recordkeeping and records that they maintained since 1996 as to whether, in fact, there may have been a partial payment or something from the dealer because they had all their records. Why is a partial payment a defense to a statute that criminalizes the possession of an Uzi? Because the statute, the way ‑‑ you pay a $200 tax as part of the registry. So if he paid the $200 tax and the ATF failed to register it, then that would be a defense. He did what he was supposed to do, the transferor, in his part of paying the $200. But since they had all of his records, we could have explored. Well, if you couldn't ‑‑ if you found entries, the same entry, 10791, for two separate guns, what about any other potential records in relation to payment of the $200 which would have then triggered the registry under the National Firearm Registry Act? But since this was not disclosed until the middle of the trial, we had already made certain arguments and set forth what our defenses were going to be when they controlled all of those records and had them since 1996. All right. Well, we're now almost eight minutes over, so we'll hear now from the government. Mr. Coffman. May it please the Court, my name is Jeffrey Coffman. I'm an assistant U.S. attorney in the Southern District of New York. I represent the government on appeal and I represented the government at trial. Going in the order that opposing counsel addressed the issues in his brief, starting with statute of limitations, obviously the government did not charge Mr. Elmowski with failing to register the gun, didn't charge him with an unlawful transfer of the gun, it charged him with unlawful possession of the gun. And as I hear counsel, there is no dispute that he did possess the gun. There certainly wasn't ‑‑ Could you address his argument that it was impossible for him to actually cure the violation by registering it himself? That was the trial testimony from one of the ATF witnesses. The testimony was that he could neither possess it, acquire it, or transfer it, unless it was registered by the person from whom it was transferred to him. Yeah, so that is troubling, isn't it? If this was a violation that he was unable to cure and was, you know, maybe he was familiar with the physical characteristics of the gun, but what were his choices then? Why would the government even prosecute something like that then? So two answers, Your Honor. First, I don't think it was impossible for him to cure the violation. It was impossible for him to cure the violation while still possessing the gun. He could have given up possession of the gun and the violation would have been cured, at least the ongoing violation. In terms of the question about why is the government even prosecuting this, first of all, the National Firearms Act and the statute that criminalized the possession of an unregistered short barrel rifle as well as a few other types of firearms dates back to the 1920s, early 1930s. Is this an unregistered short barrel rifle or a misregistered short barrel rifle? Unregistered. I mean, there is a registration of sorts, right, that calls it a pistol. Well, there is the federal registry, which this gun was not on. This gun was on a New York State pistol permit. That is not what I think we refer to as a registry. That is the New York State pistol permit. Maybe they call it a registry. I've not heard it referred to as that. But that certainly does not satisfy the federal statute, which speaks to registering with the ATF, not with New York State. And in answer to your question and related to that, there is some ambiguity about whether this was a mistake at the time of the transfer. Now, the defense has, and did in the trial for it, characterized it as an innocent mistake by the seller of this firearm, the same seller who testified at trial as a defense witness and claimed to remember the transaction from 30 years earlier. It became clear at the trial that he, in fact, didn't remember the transaction as well as he testified he had. He didn't remember that the gun had a stock. He didn't remember that it said right on it that it was a carbine, which is a rifle. And he turns out not to have actually filled out the 4473 form, which did identify the gun as a rifle. But I'm still really troubled by the notion that there was some kind of registration that Mr. Elmowski had reason to rely on in that he was buying from a dealer, a licensed dealer, and now we're some decades later and he's being prosecuted because an error was made and he has no way of curing it. You say what his option is, having paid money for the firearm, his option is to surrender it and not possess it anymore when he discovers it. That seems like a not very satisfactory option. Why couldn't he proceed to register it or obtain its registration in some way? I don't foreclose the possibility that he could have given up possession and then reacquired it from a federal firearms dealer who registered it. But I think one can certainly take issue with the statute and what it requires, but it criminalizes possession of a gun when one knows of the characteristics that make it a firearm. These are weapons that were deemed so dangerous, the way they were used at the time the statute was enacted, that it was put on the... I agree, but you're not providing a way for the person to comply with the law after an error has been made. To give up a firearm would be the only way. Correct. And I submit, Your Honor, you're talking at least hypothetically. I don't know that the evidence in this case shows that an error was made, but in the hypothetical situation that an error were made and the possessor of the gun became aware of that, they would have to give up possession to come into compliance with the law. Okay. The next issue that I'll address was the Brady, the alleged Brady violation. And this is a case where the information that the defendant has claimed is Brady material and that is exculpatory is actually not favorable to the defendant. It's hard for me to even articulate how it's relevant to the defense or any theory of the defense. The closest we've heard, I think, is... So why was it turned over? I mean, you have no obligation to turn over stuff that is not relevant to a defense and is, you know, just some random document. So why did you turn it over? Well, we turned over the information about the existence of a duplicate transaction number as 3500 material because there was an email from the custodian that discussed it, and so we turned that over prior to trial. The 4473 itself for the Uzi we turned over in the midst of trial. As indicated in the record and in the brief, that was a document that the custodian brought with him to the trial from West Virginia to White Plains. That morning, the first day of trial, he gave it to me as reflected in the record. He was the third witness called that day, and during his cross-examination... Wait, I want to be clear on this. So the Uzi, the 4473 for the Uzi was not produced before trial either? No, Your Honor, I apologize. I was speaking of the Uzi, the 4473 for the clock. No, I'm talking about the Uzi. That was produced before trial, right? And that was clearly relevant. Look, if the goal was to show that this is a really old record, the 4473 for the Uzi made that clear, right? Yes, and I apologize for not being clear. The 4473 for the Uzi was relevant, and we turned that over as soon as we found it. Okay. So what was it? The 4473 for the clock was produced as part of the 3500 material for the ATF witness, right? No. The existence of a duplicate transaction number, which was made clear in an e-mail to me, was turned over as 3500 material. The actual 4473 for the clock was not received until the morning of trial when the witness brought it with him to court. It was not turned over until the third witness, that custodian, was on the stand and, during cross-examination, was being questioned about the manner of his search and the—actually, it was his redirect— the manner of his search and his finding this 4473 for a clock with the same transaction number. At that point, the government disclosed it because it was relevant to the questioning that was going on. Whether or not that questioning was relevant to the defense or the case is a different matter, but it was a matter into which counsel was inquiring, so we turned it over at that point. Candidly, you know, it would have been better if we turned it over the morning we received it, but we did not because it didn't appear to bear on any issue. And I will note that it's never been articulated on exactly what issue it bears on until, I think, Mr. Burke suggested for the first time now that that 4473 for the clock might somehow have been used to suggest that, in fact, the Uzi had been registered, that the dots haven't been connected there. I don't know how that—how it could have been used to show that. To the extent counsel believes it could have been, it must be noted, the clock 4473 was admitted as an exhibit at trial, and he was free to make that argument. The dots still can't be connected, and counsel chose not to make any argument along those lines to the jury, despite the admission of the clock 4473 into evidence. There's been no other articulation of how the clock 4473, its existence, the fact that it had a transaction number that was the same as the transaction number on the 4473 for the Uzi, was favorable. There's never been such an explanation. I will also point out, it's clear from the form itself, but the clock 4473 was a sale to a different person with a different name, a different address, it was on a different date, it was a different gun, it was a different serial number on the gun. It doesn't show anything about anything Mr. Olmowski did or anything that anyone did with respect to the gun at issue here, the Uzi. And for that reason, I submit that it wasn't clear at the time the government received the email about the duplicate transaction number and disclosed it to the defense. It wasn't clear when any of us saw the 4473 for the Glock, and it wasn't made clear during the trial to the court, the government, or the jury how that form 4473 for the Glock was favorable. And I submit to the court, it wasn't. Could I ask a question? Of course. Did the government put forward at trial any evidence that Mr. Olmowski knew of each specific characteristic of the Uzi that made it a rifle under Section 5845C? Extensive evidence. I would say that was probably the majority of the trial evidence. That he knew? Or was it the images that showed the rifling of the barrel was self-evident? We did prove it circumstantially. He did make a statement that he was familiar with firearms laws and the Uzi wasn't registered, but we proved circumstantially that he had knowledge of the characteristics of the weapon. Just by virtue of possessing it? It included his possessing the weapon for about 30 years, keeping it loaded or keeping loaded magazines with it, having it for that period of time, but also having great familiarity with guns of various types, rifles, pistols, shotguns, other semi-automatic rifles, having even one that was both a rifle and a shotgun, having guns that were kept in easy reach to use, guns that were hanging in holsters loaded in his apartment, or in his house rather. The evidence the government presented included showing that he possessed not just the Uzi, but many of these other guns for decades. This wasn't someone who had... But the notion was then that his familiarity and some evident characteristics, including the barrel length, there's some very specific features that need to be satisfied in order to qualify as a registrable rifle, right? Absolutely, Your Honor. Some of these were visible. The length of the barrel, two inches, was visible outside of the body of the weapon. But it is really a technical matter whether it qualifies or not. Looking at the images, there are so many variations in features on these firearms. I can imagine it would be relatively easy to be unfamiliar, or maybe also definitions change some potentially over time. There was nothing specific that he knew that this qualified as a rifle because he was familiar with these particular characteristics. Is that right? I would say that's mostly correct, although there's no requirement to be convicted under this statute that one know it qualifies as a rifle. No, no, I know, but you have to be aware of the physical characteristics. But I'm saying there's some subtlety in some aspects of the physical characteristics. If you take your tape measure out and say, oh, it's 10 inches or 9 inches, it must qualify. But you have to be pretty deliberate about looking for those specific characteristics. Is that what you're saying? That is mostly fair. I think some other guns that had a bit longer barrels and would be a closer call. This one was not particularly close to the margin on that. I imagine if the facts were that this was rusting in an attic in a box under two dozen other boxes and in clothes and blankets, that would be hard to argue that he necessarily knew the features of this gun. You seem to be suggesting that the point was that the gun was in working order, it was cared for, and it was found where there's lots of other guns. In a safe. Correct, Your Honor. That is correct. In addition, many of the characteristics are not particularly the standard ones. It has to fire a bullet with a single pull of the trigger. This gun clearly did that, and anyone who ever fired it would know that. Did we present evidence of Mr. Olmowski shooting this gun? No. And in terms of being that you fire from your shoulder as opposed to the hand, some of those elements are modifiable, aren't they? When you say modifiable, are you talking about the gun itself? Yeah, you can add. There are things you can add that would make it turn into a rifle. That is correct. That's not what the evidence in this case showed. The evidence in this case showed it had a foldable stock that was attached at the time of sale and comes attached to the gun, that the gun is designed to be fired and really can only be effectively fired from the shoulder with the stock extended because the sights, if one were to hold it like a pistol, and you should know the jury all did this. They asked to hold the weapon, and they held it. They tried to hold it like a pistol. Shortly after that, they rendered their verdict. The sights on this weapon only worked, as the expert's testimony made clear, when the gun is held to the shoulder because that's when the sights are the right distance from the eyeball to be able to use them. If they're extended, as held by a pistol, the sights don't work. The gun can't be fired at the range that the sights are designed for. It's also a very heavy weapon. And there was extensive testimony about how the gun is fired, how there's a cheek weld in the wire foldable stock where the shooter's cheek is designed to fit as a third point of contact to stabilize the gun. All right. Any other questions from my colleagues? No, so we've gone over with you two. So I'll give, if you'd like, Mr. Burke, a minute. I mean, we used up your rebuttal, but I let Mr. Kaufman go over, not quite as much, but still. If there's anything you'd like to say, I'll give you a minute. Just briefly, I'm only going to speak as to the Brady issue. There, Your Honors, this evidence, the 4473 with the same transaction number for the Glock, was suppressed until the recross of an ATF agent who was coming in to speak about his record searches. So it was only when I started questioning about the record keeping did he say, oh, well, the other 4473, and I was like, wait a minute, what other 4473 with the same transaction number? Did I confront the government and say, where's this other 4473 he's talking about? They had it. They had it that morning. No, I get all that. I think I now understand all that. But I'm still fuzzy as to what use you would have been able to make of this document had you gotten it sooner. Well, the point being is that the timing of when disclosures are made often triggers what defenses are going to be released. No, I get that. But the elements for a Brady violation require you to show that it's favorable to the defendant and that the failure to disclose it resulted in prejudice. Right. So how do you meet those two hurdles? The favorable component is two-pronged, as the Court well knows. It's both favorable, meaning exculpatory, or for impeachment. Or for impeachment. I get it. Okay, so what would you have been able to do with this that you weren't able to do? Well, I think, turning back the clock, we would have then analyzed, what is our theory of the case going to be if we had this as far as attacking the record-keeping of the ATF? They had an affidavit that this witness submitted certifying that this 4473 transaction records was the records for the UZI. There was never anything in that certification, that's Government Exhibit 3, that said there were multiple 4473s in the same transaction. I get all that, but it's still not true. So what would you have argued? It seems like what you're saying is you might have argued something different, and I think you need to do better than that. Okay. What I would have argued and what we would have pursued was they had the records since 1996, all of the records from serious sportsmen. We would have further explored the ATF's record-keeping process and what records they received, how they were cataloged, how they were placed on micro-fees, what didn't make it to micro-fees, what did. Because here you have a transaction registry that has a one transaction number that's tied into two different guns. So you're saying that you might be able to show that there was a document that was lost?  And that it was, in fact, registered? Or, in fact, he paid a tax thinking that it would be registered, meaning the dealer. Because it's a two-prong, they have to pay the $200. But that still goes to kind of good faith. So that wouldn't be, I mean, you really want to find a document that you think would be missing.  And that it was, in fact, registered because that ultimately would exonerate your client. That's correct, Your Honor. And since they were the sole possessors of the records because the, we spoke to the dealer. We called him as a witness. He didn't have any records because he, under law, he was required to turn them all over to the ATF when he went out of business in 1996. So we had to rely on what they were saying that they had. And we didn't have this other record. And that would have led to us inquiring, well, what other records do you have? They said there was no record of this ever being registered in the National Firearm Registry. What other records did they have other than what was produced doing a further deep dive? Right, but that's not favorable. You're speculating that maybe you could have found something. Usually you have to find something and then say that's prejudicial. We would have used this to advance an argument. You're simply saying that you might have done some stuff different. Well, I guess what I'm saying is that if we had it earlier, we would have done certain things differently. Okay, but you've had it now for a while. So what have you found since? Anything? Well, Your Honor, he was convicted at trial. We got it during the trial. What do you mean as far as what? What happens often with Brady violations is to show, to meet the problems of Brady, people will then say, okay, now we have this document. And based on FOIA requests or something else, we can show a piece of evidence that we would have been able to introduce. But you haven't done that. You're speculating that maybe you would find tax records that show a tax was paid. But you don't know what tax was paid, right? We don't, Your Honor. But what we do know is that at least the records or the methodology that the ATF used to find records was flawed. And that's something that we would have been able to explore, which, correct, I don't have any smoking gun, shall we say, here. We're talking about guns. But I do now have evidence to show that their records or the searching methodology didn't disclose everything when they previously said that it had. All right. Well, I think we got our money's worth. Thank you both. Thank you. We will reserve decision. And now we're going to transition to FOIA requests. So I must have been channeling the next case. Thank you.